UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW S. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-118-SPM |
| | ) | |
| DEAN FINCH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendant Darren Garrison, Circuit Clerk of Wayne County, Missouri ("Defendant Garrison") and Laura Yount, employee of the Office of the Circuit Clerk of Wayne County, Missouri ("Defendant Yount") (collectively, "Defendants").[1] (Doc. 62). The motion has been fully briefed, and the parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. (Doc. 73).

### I.  FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, an officer from the Missouri Highway Patrol provided, under oath, a probable cause statement seeking the arrest of a Matthew Smith who was born in 1985 and had an address in Perryville, Missouri ("1985 Smith"). (2d Am. Compl. ¶ 9.) The statement provided that the Matthew Smith sought was 30 years of age, and it contained the 1985 Smith's Social Security Number. (*Id.*) Pursuant to the probable cause statement, an information was filed in the Circuit Court of Wayne County. (*Id.* at ¶ 10.)

---

[1] Defendants Garrison and Yount are not the only defendants in the case, but they are the only defendants whose claims are at issue in the instant motion.

Defendant Garrison is the Circuit Clerk of Wayne County, Missouri. (*Id.* at ¶ 5). Defendant Yount is an employee of the Office of the Circuit Clerk of Wayne County, Missouri. (*Id.* at ¶ 6). On September 8, 2015, Defendant Garrison, Defendant Yount, or another one of Defendant Garrison's employees completed a warrant or warrant application for the arrest of a Matthew Smith. (*Id.* at ¶ 11-12.) Defendant Garrison's duty and his employees' duty was simply to type the information from the probable cause statement and information into the arrest warrant. (*Id.* at ¶ 17). However, when completing the warrant application, instead of using the information in the probable cause statement and the information identifying the 1985 Smith, Defendant Yount or Defendant Garrison inserted the birth date and age of Plaintiff. (*Id.* at ¶¶ 11, 13-14.) Plaintiff's birthdate is in 1961, his address at that time was in St. Charles, Missouri, and his age was 54. (*Id.* at ¶ 15.) An arrest warrant was issued, and the 1985 Smith was arrested and posted bond. (*Id.* at ¶ 19.)

On October 23, 2015, another arrest warrant for the 1985 Smith was authorized in the same proceeding. (*Id.* at ¶ 20.) Instead of issuing an arrest warrant for the 1985 Smith as listed in the probable cause statement and information, Defendant Yount, Defendant Garrison, or someone from Defendant Garrison's office issued a second warrant application seeking the arrest and jailing of Plaintiff. (*Id.* at ¶ 21.) Defendant Garrison signed the warrant containing the erroneous information without reviewing its accuracy. (*Id.* at ¶ 27.) Defendant Garrison did not provide any training to his employees regarding the proper method of entering data from an information or probable cause statement into a warrant application. (*Id.* at ¶ 30.) The warrant application was presented to the Circuit Court of Wayne County without notice that the data in it had been changed and was different from the data in the information and probable cause statement. (*Id.* at ¶ 28). The warrant was issued based upon the erroneous data. (*Id.* at ¶ 29).

An employee of the Office of the Sherriff for Wayne County entered the warrant for the arrest of Plaintiff into MULES and other police-used communications that seek the arrest and detention of individuals. (*Id.* at ¶ 33). Defendant Dean Finch is the Sheriff of Wayne County. (*Id.* at ¶ 2). There is no custom or practice in Defendant Finch's office to review or provide for the accuracy of information in arrest warrants when the information is entered into MULES. (*Id.* at ¶ 34).

In October of 2015, Plaintiff was travelling internationally. (*Id.* at ¶ 35.) On October 30, 2015, Plaintiff returned from Hong Kong, arriving at O'Hare International Airport in Chicago, Illinois. (*Id.* at ¶ 36.) Because of the arrest warrant, the United States Customs Service detained Plaintiff as he was going through customs and turned him over to the Chicago Police Department ("Chicago PD"). (*Id.* at ¶¶ 37-38.) Chicago PD representatives and the attorney then representing Plaintiff contacted the Wayne County Sherriff's Department that afternoon to request confirmation that the warrant seeking Plaintiff's arrest was valid. (*Id.* at ¶ 39.) Defendant Stacey Sikes was on duty at the Wayne County Sherriff's Department. (*Id.*) She did not undertake any review of the warrant but advised the Chicago PD that Plaintiff should be held without bail. (*Id.*) The Chicago PD placed Plaintiff in the Cook County Jail until a court hearing could be held. (*Id.* at ¶ 40.) The next afternoon, on October 31, 2015, Plaintiff's attorney, officials from the Cook County Prosecutor's Office, and/or representatives of the Chicago PD contacted the Wayne County Sherriff's Department a second time to request confirmation that the arrest warrant for Plaintiff was valid. (*Id.* at ¶ 42.) This time, the representative undertook a review of the warrant and informed the Chicago PD that it was erroneous. (*Id.*) Plaintiff was subsequently released. (*Id.* at ¶ 44.)

Plaintiff was never charged with possession of illegal drugs, was never on bail, and had no charges pending against him in Wayne County or any other jurisdiction. (*Id.* at ¶ 46.) Plaintiff alleges that Defendants' acts were outrageous and done with malice, or in the alternative were willful and wanton and done with a conscious disregard for Plaintiff's rights. (*Id.* at ¶ 48).

In his Second Amended Complaint, Plaintiff asserts seven claims: (I) violation of 42 U.S.C. § 1983 against Defendants Finch and Sikes; (II) violation of the Missouri Sunshine Law, Mo. Rev. Stat. § 610.010 *et seq.*, against Defendant Finch; (III) negligence against Defendants Finch and Sikes; (IV) false imprisonment against Defendants Finch and Sikes; (V) violation of § 1983 against Defendants Garrison and Yount; (VI) negligence against Defendants Garrison and Yount; (VII) false imprisonment against Defendants Garrison and Yount; and (VIII) ultra vires acts against Defendants Garrison and Yount.

Defendants Garrison and Yount now move to dismiss Counts V, VI, VII, and VIII under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.   LEGAL STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, but it need not accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

In the instant motion, Defendants argue that Counts V, VI, VII, and VIII should be dismissed for several reasons. First, Defendants argue that any official capacity claims against Defendant Yount are not cognizable under § 1983 and are barred by the Eleventh Amendment. Second, Defendants argue that Count V (Plaintiff's § 1983 claim) is barred by absolute quasi-judicial immunity. Third, Defendant Garrison argues that Plaintiff has failed to state a claim against Defendant Garrison in Count V because an official cannot be held vicariously liable for the tortious conduct of his subordinates under § 1983, because Plaintiff has not alleged sufficient facts to support a failure to train or supervise claim against Defendant Garrison, and because Plaintiff's allegations against Defendant Garrison amount to, at most, negligence. Fourth, Defendants argue Count V is barred by qualified immunity. Fifth, Defendants argue that Count VI (negligence) and Count VII (false imprisonment) are barred by Missouri's judicial immunity doctrine. Sixth, Defendants argue that Count VI (negligence) is barred by the public duty doctrine. Seventh, Defendants argue that Count VII (false imprisonment) and Count VIII (ultra vires acts) should be dismissed because Plaintiff has alleged no more than negligence.

### A.    To the Extent that Plaintiff Is Asserting Claims Against Defendant Yount in Her Official Capacity, Those Claims Are Dismissed

In the caption of his Second Amended Complaint, Plaintiff states that he is bringing the action against "Laura Yount, individually and in her official capacity . . ." In their memorandum in support of their motion to dismiss, Defendants argue that any official capacity claims against Defendant Yount are not cognizable and are barred by the Eleventh Amendment, and they provide case law to support that assertion. *See* Doc. 63, at 5-6. In his response to the motion to dismiss, Plaintiff provides no opposition to Defendants' argument; instead, he states that he "does not seek relief from Defendants Garrison and Yount in their official capacities." *See* Doc.

70, at 8, n.1. Plaintiff also states that to the extent that he needs to clarify the capacity in which he is suing Defendant Yount, he requests leave to amend his complaint to provide such clarification.

In light of Plaintiff's acknowledgment that he does not seek relief from Defendant Yount in her official capacity, the Court finds that any official capacity claims against Defendant Yount in the Second Amended Complaint should be dismissed. The Court finds no need for Plaintiff to file yet another amended complaint to clarify this point.

**B.  Count V Is Not Barred by Absolute Quasi-Judicial Immunity**

In Count V, Plaintiff alleges that Defendants' actions with regard to his arrest warrant violated his constitutional rights under § 1983. As discussed above, Plaintiff brings this claim against Defendants in their individual capacities. Defendants argue that this claim should be dismissed because it is barred by absolute quasi-judicial immunity.

"Absolute quasi-judicial immunity derives from absolute judicial immunity." *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (quoting *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994)). Under the doctrine of absolute judicial immunity, it is well established that "[a] judge is entitled to absolute immunity for all judicial actions that are not 'taken in a complete absence of all jurisdiction.'" *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). *See also, e.g.*, *Maness v. District Court of Logan County*, 495 F.3d 943, 944 (8th Cir. 2007). Judicial immunity protects the finality of judgments, discourages inappropriate collateral attacks, and "protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988) (citing *Bradley v. Fisher*, 20 L.Ed. 646 (1872)).

Through the doctrine of absolute quasi-judicial immunity, courts have extended the protections of judicial immunity to individuals other than judges under some limited circumstances. These circumstances fall into two general categories. First, absolute quasi-judicial immunity may apply to individuals who conduct adjudicative proceedings similar to those conducted by judges, such as members of state boards and commissions. *See, e.g., Gilliam v. Hodges*, 614 F. App'x 346 (8th Cir. 2015) (collecting cases and finding that the members of the Arkansas State Claims Commission were entitled to absolute quasi-judicial immunity because their hearings "contain sufficient adversarial procedures to qualify as quasi-judicial proceedings"). Second, absolute quasi-judicial immunity may apply to court employees or other government employees when they perform acts closely related to the judicial function, such as carrying out a judge's order. *See, e.g., Rogers v. Bruntrager,* 841 F.2d 853,856 (8th Cir. 1988) ("Clerks of court have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction.") (internal quotation marks omitted). *See also Snyder v. Nolen*, 380 F.3d 279, 286-87 (7th Cir. 2004) (discussing the two general categories of absolute quasi-judicial immunity).

At issue in the instant case is whether Defendants Garrison and Yount are entitled to absolute quasi-judicial immunity for the conduct alleged here. The Court notes that an official seeking absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 n.4 (1993) (citing *Burns v. Reed*, 500 U.S. 478 (1991)). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.*

In their motion, Defendants argue that they are entitled to absolute quasi-judicial immunity because court clerks are shielded from liability under § 1983 when they perform tasks

that are an integral part of the judicial process, unless they act in the clear absence of all jurisdiction, and because the issuing and processing of warrants is an integral part of the judicial process. To support this position, Defendants rely on *Boyer v. County of Washington*, 971 F.2d 100 (8th Cir. 1992). In *Boyer*, the plaintiff filed a § 1983 claim against the Circuit Clerk of Washington County, alleging that the Circuit Clerk had signed and issued a warrant for Plaintiff's arrest upon receipt of an information from the county prosecutor, without a prior judicial finding of probable cause. *Id.* at 100-01. The Eighth Circuit found the clerk was protected by quasi-judicial immunity for signing and issuing the warrants, holding that court clerks are entitled to absolute quasi-judicial immunity "'when they perform tasks that are an integral part of the judicial function,' unless the clerks acted 'in the clear absence of all jurisdiction.'" *Id.* at 102 (quoting *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1390 (9th Cir. 1987)). Defendants argue that *Boyer* is on point here.

Plaintiff argues that *Boyer* is no longer controlling in light of the Supreme Court's subsequent decision in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), and subsequent Eighth Circuit decisions. In *Antoine*, the plaintiff filed a § 1983 claim against a court reporter for failure to provide a complete transcript of his criminal proceeding, which resulted in a lengthy delay of appellate review of his case. *Id.* at 430-31. The court below held the court reporter was protected by judicial immunity, because the tasks performed by a reporter within the scope of her statutory duties are "functionally part and parcel of the judicial process." *Id.* at 432. In considering whether court reporters should be entitled to absolute immunity, the Court began by noting that "[i]n determining which officials perform functions that might justify a full exemption from liability, we have undertaken a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Id.* at 432 (internal

quotation marks omitted). The Court found that court reporters were not among the class of persons protected by judicial immunity in the 19th century. *Id.* at 433. The Court also rejected the idea that absolute judicial immunity should be extended to court reporters solely "because they are part of the judicial function." *Id.* at 435 (internal quotation marks omitted). The Court reasoned that "the doctrine of judicial immunity "is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Id.* Thus, "the 'touchstone' for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights'" *Id.* at 435-36 (internal quotation marks omitted). "[W]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Id.* at 436 (internal quotations omitted). The Court in *Antoine* ultimately held that court reporters "do not exercise the kind of judgment that is protected by the doctrine of judicial immunity" and, therefore, are not entitled to absolute quasi-judicial immunity, even though their function is "extremely important" to the judicial process. *Id.* at 436-37.

Defendants argue that *Antoine* applies only to court reporters and did not effect a change in the way the quasi-judicial immunity analysis is applied to court clerks. However, the Eighth Circuit has expressly recognized that *Antoine* applies to officers other than court reporters. In *Robinson v. Freeze*, 15 F.3d 107 (8th Cir. 1994), the district court held that a bailiff was protected by absolute immunity when performing "normal, routine bailiff duties that were an integral part of the judicial process." *Id.* at 108. After reviewing *Antoine* and discussing the common-law protections afforded to bailiffs, the Eighth Circuit concluded that the immunity

analysis turned on the nature of the actions taken by the bailiff and the role that the judge had played in authorizing and directing those actions. *Id.* at 108-09. It found that the bailiff would be entitled to absolute quasi-judicial immunity only for actions taken where the judge "had delegated certain discretionary judicial powers to [the bailiff]" and for actions "specifically ordered by the trial judge and related to the judicial function." *Id.* at 109. Noting that the summary judgment record had been developed without the benefit of the Supreme Court's decision in *Antoine*, the Eighth Circuit remanded the case for further proceedings. *Id.* Although the Eighth Circuit did not discuss *Boyer*, the court implicitly rejected *Boyer*'s suggestion that the immunity analysis turns on whether an employee's actions were an "integral part of the judicial process."

Additionally, in post-*Antoine* cases involving the question of whether court clerks are entitled to absolute quasi-judicial immunity, the Eighth Circuit has not relied on *Boyer*'s "integral part of the judicial function" standard. Instead, the Eighth Circuit has found that court clerks are absolutely immune only for acts that are discretionary, are taken at the direction of a judge, or are taken according to court rule. In *Geitz v. Overall,* 62 F. App'x 744 (8th Cir. 2003), the plaintiff brought suit against various state-court clerks, an attorney for one of the clerk's offices, a state prosecutor, several state judges, a court specialist, and a judicial legal assistant. *Id.* at 745. The plaintiff asserted that the court clerk had intentionally failed to file his submissions, to notify him of court orders, and to respond to his inquiries. *Id.* at 746. The Eighth Circuit affirmed the district court's dismissal of the claims against the clerk's office attorney, the court specialist, and the judicial legal assistant, finding that those defendants were "entitled to quasi-judicial immunity because they were performing discretionary functions." *Id.* at 746. With regard to the court clerks, however, the Eighth Circuit reversed the dismissal. *Id.* It stated,

"**Clerks are absolutely immune only for acts that may be seen as discretionary, or for acts taken at the direction of a judge or according to court rule**." *Id.* (emphasis added; citing *Antoine*, 508 U.S. at 436; *Martin*, 127 F.3d at 721; and *Robinson*, 15 F.3d at 108-09). It found that the actions alleged by the plaintiff "arguably are ministerial, not discretionary," and it noted that the plaintiff "did not allege that the clerks were acting pursuant to court rules or instructions." *Id.* It thus found that the clerks were not absolutely immune and that plaintiff had stated a claim against them. *Id.*

Similarly, in *Maness v. Dist. Court of Logan Cty.*, 495 F.3d 943 (8th Cir. 2007), the plaintiff brought suit against a district court judge for refusing to hear evidence of innocence, against a city prosecutor for failing to present evidence, and against a county circuit court clerk for refusing to file his appeal for lack of a filing fee and refusing his repeated requests to present his application to proceed in forma pauperis to a circuit court judge. *Id.* at 944. The district court dismissed all of the claims based on immunity. *Id.* at 943. The Eighth Circuit affirmed the dismissal with regard to the judge and prosecutor, finding that they enjoyed absolute immunity. *Id.* at 944. However, relying on *Antoine*, it found that the clerk was *not* entitled to absolute quasi-judicial immunity:

> A different analysis is used to assess any immunity from suit Clerk Kellar may have. As to absolute quasi-judicial immunity, there is no suggestion in the record that Kellar's alleged refusal to present Maness's IFP application to a circuit judge was discretionary rather than ministerial. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436-37, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (when judicial immunity is extended to officials other than judges, it is because they exercise discretionary judgment as part of their function; functional approach does not require that absolute immunity be extended to court personnel simply because they are "part of judicial function"; holding that court reporters do not enjoy immunity because they have no discretion in carrying out statutory duties); *Snyder v. Nolen*, 380 F.3d 279, 286-289, 291 (7th Cir. 2004) (per curiam) (clerk of court who allegedly refused to file inmate's pleadings was not acting in "functionally comparable" way to judge and breached duty to perform ministerial act of accepting technically sufficient papers; clerk did not enjoy absolute quasi-

> judicial immunity); *cf. McCullough v. Horton*, 69 F.3d 918, 919 (8th Cir.1995)
> (per curiam) (court clerk's failure to provide transcript as ordered by court was
> not clearly discretionary act entitling clerk to immunity). Thus, Kellar was not
> shielded by absolute quasi-judicial immunity.

*Id.* at 944. *See also McCullough v. Horton*, 69 F.3d 918 (8th Cir. 1995) (holding that the district

court erred in dismissing as frivolous a *pro se* plaintiff's claim that a court clerk failed to comply

with a judge's order that the clerk provide a transcript; stating, "We cannot say [the plaintiff]'s

claim lacks an arguable basis in law, because it is not clear that [the court clerk's] failure to

provide a transcript when ordered to do so by the court constitutes a discretionary act entitling

him to immunity.") (citing *Antoine*, 508 U.S. 429, and *Robinson*, 15 F.3d at 108-09).

Defendants do not address these Eighth Circuit cases. Instead, they argue that even after

*Antoine*, the Eighth Circuit has continued to rely on *Boyer* for the standard to use in determining

whether court clerks are entitled to quasi-judicial immunity. To support their argument, they cite

*Smith v. Slay*, No. 4:14-CV-1373-CDP, 2015 WL 1955018 (E.D. Mo. Apr. 29, 2015), and

*Hamilton v. City of Hayti,* No. 1:16-CV-54-RLW, 2017 WL 83655 (E.D. Mo. March 2, 2017), in

which the courts relied on *Boyer* to find that court clerks enjoyed absolute immunity in issuing

warrants. Defendants' argument is unpersuasive. First, contrary to Defendants' suggestion that

these are Eighth Circuit cases, *see* Reply, Doc. 72, at 3-4, they are actually district court cases.

Unlike the Eighth Circuit cases discussed above, these are not binding on the undersigned. *See*

*Camreta v. Greene*, 563 U.S. 692, 708 n. 7 (2011) ("A decision of a federal district court judge is

not binding precedent in either a different judicial district, the same judicial district, or even upon

the same judge in a different case.") (quoting 18 J. Moore et al., Moore's Federal Practice

§ 134.02[1][d], pp. 134-26 (3d ed. 2011)). Second, the judges in *Smith* and *Hamilton* were not

presented with briefing or argument regarding either *Antoine* or the Eighth Circuit cases

addressing immunity for court clerks after *Antoine*, and they did not address those cases in their orders. *Id.* Thus, these cases are of limited persuasive value.

After reviewing *Antoine* and the Eighth Circuit cases decided after *Antoine*, the Court concludes that *Boyer*'s statement that court clerks are entitled to absolute quasi-judicial immunity for any acts that are an "integral part the judicial process" is no longer the governing law. Instead, "[c]lerks are absolutely immune only for acts that may be seen as discretionary, or for acts taken at the direction of a judge or according to court rule." *Geitz*, 62 F. App'x at 746. Here, Plaintiff alleges that Defendants had a duty to type the identifying information from a probable cause statement into an arrest warrant or warrant application, but instead of doing so, typed into the arrest warrant or warrant application the identifying information of a different individual. There is no suggestion in Plaintiff's Second Amended Complaint or in Defendants' motion that Defendants' actions were taken as part of a discretionary, rather than ministerial, function. Defendants have also not established that their actions were taken at the direction of a judge or pursuant to a court rule. Thus, at this stage, Defendants have not met their burden of showing that that Count V is barred by absolute quasi-judicial immunity, and the claims will not be dismissed on that basis.

### C. Plaintiff Has Not Stated a Claim Under § 1983 Against Defendant Garrison Based on a Vicarious Liability Theory or a Failure to Train or Supervise Theory, but Has Alleged Defendant Garrison's Personal Involvement in the Alleged Constitutional Violations

Defendants next argue that Plaintiff has failed to state a claim against Defendant Garrison because (1) an official cannot be held vicariously liable for the tortious conduct of his subordinates under § 1983, (2) Plaintiff has not alleged sufficient facts to support a failure to train or supervise claim against Defendant Garrison, and (3) Plaintiff's allegations against

Defendant Garrison amount to, at most, negligence, which is insufficient to state a claim under § 1983. The Court will address each argument in turn.

1. Plaintiff Cannot State a Claim Based on Vicarious Liability

Defendants first argue that Defendant Garrison may not be held liable for the actions of his subordinates under a theory of vicarious liability. Defendants are correct. It is well-established that "vicarious liability is inapplicable to . . . § 1983 suits," and that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* "[A] supervising officer can be liable for an inferior officer's constitutional violation only 'if he directly participated in the violation, or if his failure to train or supervise the offending actor caused the deprivation.'" *Id.* (quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)). Thus, Defendant Garrison cannot be held liable under § 1983 merely based on the actions of his employee.

However, to the extent that Defendants are suggesting that Plaintiff's *only* allegations against Defendant Garrison are based on the actions of his employee, such an argument is without merit. Plaintiff has alleged that "Defendant Garrison, or an employee working for him" completed the warrant, inserted Plaintiff's identifying information into the warrant, and then issued another warrant application seeking Plaintiff's arrest. He has also alleged that Defendant Garrison signed the warrant containing Plaintiff's identifying information. These factual allegations suggest that Defendant Garrison was personally involved in the actions alleged to violate Plaintiff's constitutional rights and that his liability is not solely related to his status as a supervisor of employees. Indeed, several of the allegations against Defendant Garrison are

essentially the same as those against Defendant Yount. Thus, this argument does not provide a basis for dismissing the claim against Defendant Garrison in its entirety.

2. <u>Plaintiff Has Not Stated a Claim Against Defendant Garrison Based on Failure to Train or Supervise</u>

Defendants next argue that to the extent that Plaintiff is asserting a claim against Defendant Garrison based on a theory that he failed to train or supervise his employees, that claim must also be dismissed, because Plaintiff has not made sufficient factual allegations to support it. The Court agrees.

To show that Defendant Garrison is liable under § 1983 based on a failure to train or supervise his employees, Plaintiff must show that Defendant Garrison "(1) had 'notice of a pattern of unconstitutional acts committed by subordinates'; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to [Plaintiff]." *Livers v. Schennk*, 700 F.3d 340, 355 (8th Cir. 2012) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1990)). *See also Parrish*, 594 F.3d at 1002 (citing *Jane Doe A. v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990), and *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)). "In order to show deliberate indifference or tacit authorization, [Plaintiff] must allege and ultimately prove [Defendant Garrison] had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Livers*, 700 F.3d at 355-56 (internal quotation marks omitted). "A defendant may have notice that her training practices are inadequate by two means: (1) where the failure to train is so likely to result in a violation of constitutional rights that the need for training is patently obvious, and (2) where a pattern of misconduct indicates that the defendant's responses to a regularly recurring situation are insufficient to protect constitutional rights." *Rogers v. Taylor*, No. 4:18-CV-20-HEA, 2018 WL 1872413, at *2 (E.D. Mo. Apr. 19, 2018)

(internal quotation marks omitted; citing *Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004), and *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Plaintiff alleges that Defendant Garrison "provided no training in the proper method of entering information in a warrant application from the information in a Probable Cause Statement or an Information, provided no training that stated the clerk's office cannot alter data in a Probable Cause Statement or in an Information, and cannot submit a warrant application without the information contained in the application being submitted under oath, and provided inadequate or no training in the proper method of making a warrant application." (2d Am. Compl., Doc. 49, ¶ 30.) However, Plaintiff has not made any allegations to suggest that there was a pattern of unconstitutional acts committed by Defendant Garrison's employees or that Defendant Garrison received any notice of such a pattern. He has also not alleged any other facts plausibly suggesting that Defendant Garrison had notice that his training procedures were inadequate and likely to result in a constitutional violation.

The Court notes that this is not a case where it was "patently obvious" that the supervisor needed provide the training at issue. Plaintiff has alleged that Defendant Garrison and his employees "are required and it is their duty to simply type and put the verified and sworn information in the probable cause statement and Information into the arrest warrant." (*Id.* at ¶ 17). This is a simple procedure that appears to require nothing more than typing information from one document into a second document. It would not have been "patently obvious" to Defendant Garrison that he would need to train his employees not to alter the data in the probable cause statement or information before inserting it into the warrant, nor would it have been patently obvious to Defendant Garrison that he would need to train his employees not to enter information from individuals other than those described in the Probable Cause Statement or

Information. Any reasonable employee would understand that he or she was not permitted to fill out an arrest warrant using information for an individual not described in the probable cause statement. Because Defendant Garrison was not on notice of any pattern of misconduct, and because there was no obvious need to train his employees in order to avoid the constitutional violations at issue, Defendant Garrison is not liable based on a failure to train or supervise theory. *See, e.g., Livers*, 700 F.3d at 356 (holding that a sheriff was not liable based on a failure to train or supervise theory where the sheriff's subordinates fabricated evidence; stating that there was no "patently obvious need" to train employees not to fabricate evidence and noting that "any reasonable DCCSI employee would know fabricating evidence was unacceptable.").

For all of the above reasons, Plaintiff has failed to state a claim against Defendant Garrison based on a failure to train or supervise theory, and that claim will be dismissed.

### 3. Plaintiff Has Alleged More than Mere Negligence

Defendants next argue that Plaintiff has failed to state a claim against them under § 1983, because Plaintiff's allegations amount to nothing more than negligence, which is not sufficient to sustain a claim under § 1983. The Court disagrees.

Defendants are correct that under Eighth Circuit law, mere negligence leading to a mistaken arrest is not sufficient to give rise to a claim under § 1983. *See Lane v. Sarpy Cty.*, 165 F.3d 623, 624 (8th Cir. 1999) (affirming grant of summary judgment in favor of defendants who mistakenly arrested and detained a plaintiff, believing him to be a different individual with the same name; stating, "negligent conduct does not give rise to a due process claim pursuant to § 1983" and finding that the conduct of the defendants "did not rise to the level of recklessness"); *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (holding that where a police communications operator misread information on her computer and failed to

notice that a person's name was listed only as an alias, and the mistake led to the arrest of the wrong person, the mistake amounted to nothing more than negligence and thus did not give rise to a claim under § 1983; noting that the mistake was "occasioned . . .by the press of business and by the speed with which officers in Ms. Shook's position were required to act").

In the instant case, however, the Court finds that Plaintiff has alleged more than mere negligence. Based on the facts as alleged, this is not simply a case where someone failed to notice a detail while reading a document or made a typographical error while entering a name or date. Plaintiff's allegations indicate that Defendants had in their possession a probable cause statement containing accurate identifying information for a particular individual, and it was their duty to type that information into an arrest warrant for that individual. However, instead of simply typing that information the arrest warrant, Defendants ignored that information and (for some unknown reason) went out of their way to find the identifying information of a different, 54-year-old individual, and then used *that* identifying information to create an arrest warrant. Plaintiff further alleges that Defendants did this without reviewing the warrant or verifying that the information they were typing into the arrest warrant was the same as the information in the probable cause statement on which they were supposed to be relying. Plaintiff also alleges that Defendants' acts were done with malice or, in the alternative, were willful, wanton, and done with a conscious disregard for Plaintiff's rights. These allegations, taken as true and without additional context, are sufficient to suggest a plausible claim that Defendants may have acted in at least a reckless manner. Thus, Plaintiff's argument that Count V should be dismissed because it alleges only negligence is without merit.

The Court acknowledges that additional details and context obtained through discovery may demonstrate that Defendants' actions amounted to no more than negligence. However,

based on the allegations in the Second Amended Complaint, Plaintiff has stated a claim under § 1983.

### D. Count V Is Not Barred by Qualified Immunity

Defendants next entitled that they are entitled to qualified immunity. "'Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known.'" *De Boise v. Taser Int'l, Inc.,* 760 F.3d 892, 896 (8th Cir. 2014) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). A government official is entitled to qualified immunity unless "(1) the facts alleged or shown, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) the right was clearly established as of [the date of the alleged violation], such that a reasonable official would have known that his actions were unlawful." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014) (internal quotation marks omitted). In order for a right to be clearly established, there need not be "a case directly on point"; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Taking as true the allegations in the Second Amended Complaint, the Court cannot say that Defendants are entitled to qualified immunity at this stage of the case. With regard to the first prong of the qualified immunity analysis, "[t]he Fourth Amendment includes the right to be free from arrest without probable cause." *Stoner v. Watlingten*, 735 F.3d 799, 804 (8th Cir. 2013). Plaintiff has alleged that Defendants, maliciously, willfully, or with conscious disregard for Plaintiff's rights, completed a warrant for his arrest in the absence of any probable cause to

support his arrest, thereby causing his arrest. Thus, Plaintiff has alleged that his constitutional rights were violated by Defendants' conduct.

Under the second prong of the qualified immunity analysis, the Court must determine whether the right in question was "clearly established at the time of the defendant's alleged misconduct." *De Boise*, 760 F.3d at 896 (quoting *Brown*, 574 F.3d at 496). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). As the Eighth Circuit noted in a case prior to the incident at issue here, "The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established." *Stoner*, 735 F.3d at 804 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999)). *See also Harris v. Zyskowski*, No. 12–7191 (NLH), 2013 WL 6669186, at *5-*6 (D. N.J. Dec. 18, 2013) (declining to apply qualified immunity to dismiss a claim based on an officer's arresting the wrong individual after failure to resolve conflicting information). However, qualified immunity will protect an officer from liability for an arrest "if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [officers] possessed." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted).

Here, the Court finds that any reasonable official would have known that willfully creating an arrest warrant for an individual in the absence of any indication that there was probable cause to arrest that individual would constitute a violation of that individual's rights. Defendants do not argue to the contrary. Thus, Defendants are not entitled to qualified immunity at this stage of the case.

### E.  Plaintiff's State Law Claims Are Not Barred by Missouri's Judicial Immunity Doctrine

Defendants next argue that Plaintiff's state law claims against Defendants Garrison and Yount are barred by judicial immunity as recognized under Missouri law. "Absolute judicial immunity has been adopted by Missouri as recognized by the U.S. Supreme Court." *White v. Camden Cty. Sheriff's Dep't*, 106 S.W.3d 626, 633 (Mo. Ct. App. 2003). "Conduct which is 'intimately associated with the judicial phase' of the judicial process is protected by absolute judicial immunity." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 492 (1991). Like the United States Supreme Court, Missouri has extended the protections of absolute judicial immunity to officials other than judges under some circumstances. For example, "judicial immunity protects a sheriff who is following a protected judge's orders." *Id.* (quoting *Nelson v. McDaniel*, 865 S.W.2d 747, 748 (Mo. Ct. App. 1993)). The reasoning for this is that a "grant of official judicial immunity to law enforcement officers executing facially valid court orders is 'essential if the court's authority and ability to function are to remain uncompromised.'" *Id.* (citing *Coverdell v. Dep't of Social & Health Servs.*, 834 F.2d 748, 765 (9th Cir. 1987)). Missouri courts have recognized that "it is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a 'lightening rod for harassing litigation aimed at judicial orders.'" *Id.* (quoting *Valdez v. City and County of Denver*, 878 F.2d 1285, 1288-89 (10th Cir. 1989)).

Missouri courts have recognized that "[t]he circuit clerk is an arm of the circuit court." *Bugg v. Rutter*, 466 S.W.3d 596, 603 (Mo. Ct. App. 2015). Under Missouri law, "[w]hile the mere status of a defendant as clerk of the court does not itself impart a cloak of absolute immunity, when the nature of the act and the circumstances under which it was performed are considered, the doctrine of judicial immunity is available as a defense for a court clerk where the

act at issue was performed at the express direction of a judge." *Id. See also Smith v. Lewis*, 669 S.W.2d 558, 563 (Mo. Ct. App. 1983) (noting that "some cases have applied the doctrine of judicial immunity to court clerks where the act at issue was performed by the clerk at the express direction of a judge" but that "[t]he mere status as a clerk of court . . . does not itself impart a cloak of absolute immunity").

Based on the Missouri law discussed above, Defendants have not established that they are entitled to judicial immunity on Plaintiff's state law claims. Defendants have not directed the Court to any Missouri authority finding that a court clerk is entitled to judicial immunity outside of the context of an act "performed at the express direction of a judge," nor has the Court identified any such authority. Defendants have not established that their actions were taken at the direction of a judge. Thus, at this stage, Defendants have not met their burden of showing that Plaintiff's state law claims are barred by absolute quasi-judicial immunity, and the claims will not be dismissed on that basis.

### F. Plaintiff's Negligence Claim (Count VI) Is Not Barred by the Public Duty Doctrine

In Count VI (negligence), Plaintiff alleges that it is the duty of Defendants Garrison and Yount to accurately transpose information from a sworn probable cause statement or information to a warrant, and that Defendant Garrison, Defendant Yount, or another employee breached that duty when they altered the data contained in the sworn probable cause statement or the information when completing the arrest warrant or arrest warrant application, causing Plaintiff's arrest.

Defendants argue that Plaintiff's negligence claim against them is barred by the public duty doctrine. "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers v. City*

*of Farmington*, 263 S.W.3d 603, 611 (Mo. 2008). "The public duty doctrine does not insulate a public employee from all liability, as he could still be found liable for breach of ministerial duties in which an injured party had a special, direct, and distinctive interest." *Id.*at 611-12. (internal quotation marks omitted). "This exception exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty." *Id.* at 612 (citing *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. 1996)). "Whether an individual has such a private interest depends on the facts of each case, not on broad pronouncements about the usual status of relevant functions." *Id.* "[T][he protections of the public duty doctrine are not intended to be limitless, and . . . will not apply where defendant public employees act 'in bad faith or with malice.'" *Id.* (quoting *Jackson v. City of Wentzville*, 844 S.W.2d 585, 588 (Mo. Ct. App. 1993)).

"The public duty doctrine is not an affirmative defense, but rather delineates the legal duty the defendant public employee owes the plaintiff." *Id.* (citing *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. 1997)). "The applicability of the public duty doctrine negates the duty element required to prove negligence, such that there can be no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole." *Id.* (citing *Christine H. v. Derby Liquor Store*, 703 S.W.2d 87, 89 (Mo. Ct. App. 1985)).

The parties dispute whether the alleged breach of duty in this case was a duty owed to the general public or a duty owed to Plaintiff in particular. The Court's review of the relevant case law suggests that where the acts at issue were performed as part of a public employee's official duties, for the purpose of fulfilling the employee's general duties to the public, the public duty doctrine applies. *Briscoe v. Walsh*, 445 S.W.3d 660 (Mo. Ct. App. 2014), cited by Defendants, is instructive. In *Briscoe*, the plaintiff was convicted and sent to prison, and was later exonerated by

DNA evidence. *Id.* at 662. The plaintiff later filed a negligence suit against lab technicians in the St. Louis County police department, alleging that several years before his exoneration they had negligently failed to locate and retrieve the evidence that ultimately exonerated him. *Id.* Specifically, the plaintiff alleged that the defendants' supervisor had requested the search and retrieval of "any and all" physical evidence, including DNA evidence, collected during the criminal investigation of nine cases, including crimes for which the plaintiff had been convicted, but the lab technicians had failed to search the lab freezer where the relevant evidence was located. *Id.* at 662-63, 667. The plaintiff alleged that had the lab technicians searched the lab freezer as directed, he would have been exonerated and released several years earlier. *Id.* at 663. The court held that the public duty doctrine protected the lab technicians from the negligence claim against them. It noted that the defendants "owed a duty to the general public as lab technicians for the Bureau of Criminal Investigation to maintain and analyze evidence collected in crime investigations." *Id.* at 666. It noted that their supervisor had "directed [them] perform a search for certain evidence collected in crime scene investigations of nine cases at the behest of the prosecutor on behalf of the State," and that "[t]he purpose of the task was to collect evidence which could be DNA tested to determine the integrity of those past convictions which were initiated and prosecuted by the State." *Id.* It found that "[T]his task and its purpose fall squarely within [the defendants'] duty to the general public as lab technicians to maintain and analyze evidence." *Id.* Finally, it noted that the state had initiated the assignment and that the defendants' supervisor had requested the defendants perform the search "as part of their official duties." *Id.* The court concluded that the defendants "owed a duty to the public to perform their jobs and did not owe a personal duty to [the plaintiff] to find, collect and analyze evidence exonerating him in particular." *Id.* at 667. *See also Jamierson v. Dale*, 670 S.W.2d 195, 196 (Mo. Ct. App. 1984)

(day care inspector who negligently failed to report a violation that led to injury of a child was protected by the public duty doctrine; her duty was not to the children potentially affected by the violations, but rather to her employer and the public at large); *State ex. rel. Twiehous v. Adolf*, 706 S.W.2d 443, 445 (Mo. 1986) (superintendent of mental health facility who negligently failed to report a dangerous window condition as required by statute was protected by the public duty doctrine; in reporting as commanded, the defendant "would be serving solely a state interest— that of obtaining objective, categorical information, on the basis of which to compare and prioritize competing needs within the system").

In contrast, where an official is performing a ministerial duty whose primary purpose is to protect the rights of an individual, the public duty doctrine does not apply. In *Jungerman v. City of Rayton,* 925 S.W.2d 202 (Mo. 1996), *abrogated on other grounds by Southers v. City of Farmington,* 263 S.W.3d 603 (Mo. 2008), police officers arrested the plaintiff and took away his personal property, including a gold Rolex watch. *Id.* at 204. Department policy required that the personal property be immediately inventoried, recorded, and stored in a property bag. *Id.* Instead, the officers placed the property in an open wooden box on a counter accessible to the public for about 45 minutes. *Id.* When the plaintiff left the police station the next morning, his watch was missing. *Id.* The Missouri Supreme Court held that the public duty doctrine did not protect the officers from a negligence claim. *Id.* at 206. It reasoned that "[a]lthough inventorying property may serve public purposes, such as the correct identification of arrestees, its primary purpose is to account for an arrestee's property in order that all lawful property not kept as evidence is returned upon release." *Id.* at 206.

To the extent that Plaintiff alleges that Defendants' actions were only negligent, the Court agrees with Defendants that the public duty doctrine applies and bars liability here. Like the lab

technicians in *Briscoe*, when Defendants were discharging (or failing to discharge) their duty to accurately transpose information from a probable cause statement or information into a warrant application, their task was not performed for the primary purpose of protecting any individual person's right not to be arrested. Instead, the primary purpose of that task was to serve the state's and the public's interest in law enforcement—specifically, its interest in arresting individuals for whom probable cause to arrest exists. In addition, like the task being carried out by the lab technicians in *Briscoe*, Defendants' task here fell squarely within their duties to the public.

However, because Plaintiff has alleged more than mere negligence, the Court cannot say that Count VI is entirely barred by the public immunity doctrine. Plaintiff has alleged that Defendants' acts were done with malice or, in the alternative, were willful, wanton, and done with a conscious disregard for Plaintiff's rights. This is sufficient to allege bad faith or malice that takes this claim outside of the protections of the public duty doctrine. *See Wheeler v. Lynn*, No. 4:10-CV-966-DGK, 2011 WL 2182540, at *3 (W.D. Mo. June 3, 2011) (finding that the public duty doctrine did not shield officers from liability on a claim in which the plaintiff's complaint "alleges that [the officers] acted 'maliciously'"). Thus, the Court will not dismiss Count VI based on the public duty doctrine.

### G. Plaintiff's False Imprisonment Claim (Count VII) Will Not Be Dismissed for Failure to State a Claim

Under Missouri law, to prevail on a claim for false imprisonment, "a plaintiff must show that the defendant confined the plaintiff without legal justification." *Zike v. Advance Am. Cash Advance Centers of Mo., Inc.*, 646 F.3d 504, 512 (8th Cir. 2011) (citing *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006)). *See all Brown v. City of Pine Lawn, Mo.*, No. 4:17-CV-01542, 2018 WL 950211, at *7 (E.D. Mo. Feb. 20, 2018) ("In order to successfully establish a claim for false imprisonment, a plaintiff must allege sufficient facts that (1) the plaintiff was detained or

restrained against her will and (2) the detention or restrain was unlawful."). "A defendant is considered to have 'confined' the plaintiff for the purposes of false arrest if he or she 'encourages, causes, promotes, or instigates the arrest.'" *Zike*, 646 F.3d at 512 (citing *Highfill*, 186 S.W.3d at 280). Plaintiff has alleged that Defendants caused the arrest of Plaintiff by completing an arrest warrant containing Plaintiff's information, and Plaintiff has also alleged that the detention was unlawful because there was no probable cause to arrest him.

Defendant argues that because Plaintiff has not alleged that Defendants "knew" that the information the placed into the warrant was false, Plaintiff has not alleged the state of mind necessary for the intentional tort of false imprisonment. The Court disagrees. Assuming, arguendo, that it is necessary for Plaintiff to prove Defendants' knowledge that the information was false in order to prevail on his false imprisonment claim, Plaintiff has adequately alleged such knowledge through his allegations that Defendants' actions were "willful" and done with malice. Thus, the Court will not dismiss Count VII.

### H. Plaintiff's Ultra Vires Claim (Count VIII)[2] Will Not Be Dismissed

Defendants' only stated basis for dismissal of the ultra vires claim is that Plaintiff has alleged no more than mere negligence. As discussed above, the Court has rejected that argument. Thus, the Court will not dismiss Count VIII.

### IV.   CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendant Darren Garrison and Laura Yount (Doc. 62) is **GRANTED IN PART and DENIED IN PART**, as discussed in the body of this order.

---

[2] This claim is mislabeled as a second "Count VII" in the Second Amended Complaint.

**IT IS FURTHER ORDERED** that any claims asserted against Defendant Yount in her official capacity are **DISMISSED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of July, 2018.